■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. BERNARD GOLDSTEIN, Appellant.— Appeal from an order of the County Court, Kings County, dated June 27, 1955, which denied, after a hearing, an application in the nature of a writ of error *coram nobis*, to vacate a judgment rendered by said court on June 30, 1941, convicting appellant, on his plea of guilty, of murder in the second degree and sentencing him to serve not less than 35 years nor more than life. Order reversed on the law and the matter remitted to the County Court for such proceedings as may be necessary and not inconsistent herewith. The findings of fact are not affirmed. The papers on appeal disclose that in 1941, appellant and two others were indicted for murder in the first degree. During the trial, the County Judge presiding (now deceased) called appellant, his codefendants, and their counsel to his chambers and suggested that each of them plead guilty to murder in the second degree. The County Judge, according to the testimony on this application, stated to the appellant herein and to his counsel that he would not accept a plea to the lesser crime from appellant's two codefendants unless appellant, who had steadfastly protested his innocence, also took such a plea. Appellant had a grave responsibility because if he did not take such a plea all three would have to stand trial and the County Judge said that it was quite likely that all would "burn". Subsequently one of appellant's three assigned counsel was called to the chambers of the County Judge, who urged again that appellant plead guilty to murder in the second degree. When appellant's attorney stated that his client claimed innocence, the County Judge promised, according to the sworn testimony of the attorney, that if the suggested plea was entered the County Judge would give appellant a sentence of from 20 years to life. Appellant's attorney communicated this information to his fellow defense counsel, to appellant

and to appellant's father and mother, whereupon it was decided that appellant would plead guilty to murder in the second degree. However, the County Judge sentenced appellant to serve a term of 35 years to life. It appears obvious that undue pressure was put upon the appellant, and that he decided to plead guilty to murder in the second degree because of the promise of the County Judge to give him the minimum sentence and because the County Judge had pointed out to the appellant that his failure to plead guilty to the lesser crime might result in his codefendants, who were his friends, " burning ". (*People* v. *Sullivan*, 276 App. Div. 1087.) Murphy, Ughetta, Hallinan and Kleinfeld, JJ., concur; Beldock, Acting P. J., dissents and votes to affirm, with the following memorandum: On January 31, 1941, Charles Amato, Louis Milano, and appellant were indicted in Kings County for murder in the first degree as the result of the death of one George Goodman on January 24, 1941. The trial on the indictment began before County Judge Brancato on June 16, 1941. Amato and Milano were willing to plead guilty to second degree murder, but the County Judge would not accept their plea unless appellant also pleaded guilty to the same crime. On June 17, 1941, each of the defendants pleaded guilty to second degree murder. On June 30, 1941, appellant was sentenced to 35 years to life; Amato was sentenced to 25 years to life; Milano was sentenced to 50 years to life. On March 10, 1944, County Judge Brancato died. By notice of motion, returnable February 18, 1955, appellant moved to vacate the judgment of conviction of June 30, 1941, on the ground that a fraud was imposed on him by the court in that he was induced to plead guilty to second degree murder on the promise by the County Judge that he would be sentenced to 20 years to life. At the hearing on this application, only one witness claimed to have personal knowledge of the alleged promise by the County Judge. That witness, one of appellant's three assigned counsel, testified that on June 17, 1941, at a conference at which only the County Judge and he were present, the County Judge promised to sentence appellant to a term of 20 years to life if appellant pleaded guilty to second degree murder. As opposed to this attorney's testimony, it appeared from the official records of the court and from the stenographic minutes that (1) the County Judge stated to appellant and to his counsel immediately before the plea of guilty was taken (and shortly after the promise is alleged to have been made) that " They will get the maximum "; (2) the County Judge stated, after each of the indicted defendants had pleaded guilty, that each had done so in the presence of his respective counsel, and appellant also in the presence of his father, and " that at no time has this Court made any promise to either or any of these defendants as to what disposition the Court will make of their case "; (3) neither appellant nor any of his counsel made any comment to the County Judge with respect to either of these quoted statements; (4) despite the fact that on June 30, 1941, appellant received a sentence more severe than one of his codefendants had received, and much more severe than the County Judge had allegedly promised, neither appellant nor any of his counsel made any protest to the court, and (5) no application was made to the court with respect to the plea or sentence until almost 14 years thereafter and almost 11 years after the death of the County Judge who allegedly made the promise. Under these circumstances, the County Judge who held the hearing on this application to vacate the judgment was free to disbelieve appellant and the attorney who testified to the alleged promise. (*People* v. *Lensky*, 1 A D 2d 831.)