**UNITED STATES of America,**

**v.**

**Rocco TATEO, Defendant.**

United States District Court
S. D. New York.

Feb. 8, 1963.

562

Vincent L. Broderick, U. S. Atty., for Southern District of New York, New York City, Charles A. Stillman, Assistant U. S. Atty., of counsel, for United States of America.

Gaynor, Mosher, Freeman, Glick & Pisani, New Rochelle, N. Y., Joseph R. Pisani, Robert A. Freeman, New Rochelle, N. Y., and Frances Kahn, New York City, of counsel, for defendant.

WEINFELD, District Judge.

The defendant, now serving a sentence of twenty-two and one-half years, moves pursuant to section 2255 of Title 28 United States Code, to vacate the judgment of conviction entered upon his plea of guilty on the ground that the plea was coerced. The motion was first heard in July, 1961 in the Criminal Motion Part before a Judge other than the Trial Judge who denied it without a hearing.[1] Petitioner appealed and while his appeal was pending he moved for a rehearing in the District Court, filing additional affidavits. The Court of Appeals remanded the matter to the District Judge who had denied the defendant's motion "for consideration of a petition for rehearing now pending before him." [2] The District Judge, with the consent of the Government, then granted the defendant's motion for a rehearing and ordered a hearing to be held in the Criminal Motion Part. Thus the matter came before this Court, which conducted a hearing and took testimony upon the issues presented by the defendant's original motion as supplemented by the additional affidavits.

On March 30, 1956 Rocco Tateo, the petitioner, and two others, Arthur Paisner and Angelo John, were charged in a five-count indictment with violations of the Federal Bank Robbery Act and conspiracy so to do.[3] The charges included: bank robbery by force and violence, under section 2113(a) of Title 18, United States Code; taking and carrying away, under section 2113(b); receiving and possessing, under section 2113(c); and kidnapping in connection with the robbery, under section 2113(e).

Prior to the trial, Paisner pleaded guilty to all counts except the kidnapping count. Tateo and the remaining codefendant, John, stood trial. On the fourth trial day, May 21, 1956, Tateo withdrew his plea of not guilty and pleaded guilty to all counts except the kidnapping count. On June 5, 1956, following receipt of a presentence report, the Trial Judge imposed a total sentence on Tateo of twenty-two years and six months.[4]

The essence of the petitioner's present claim [5] is that his plea of guilty was not

---

1. Order dated August 21, 1961.

2. Order of Court of Appeals, November 6, 1961.

3. 18 U.S.C. §§ 2113 and 371 (1958).

4. The sentence was as follows: count 1 (18 U.S.C. § 2113(a)), 20 years; count 2 (18 U.S.C. § 2113(b)), 10 years; count 4 (18 U.S.C. § 2113(c)), 10 years; count 5 (18 U.S.C. § 371), 2½ years; sentences on counts 1, 2 and 4 to run concurrently with each other; sentence on count 5 to run consecutively to the sentence on the other three counts. The kidnapping count (count 3, 18 U.S.C. § 2113(c)) was dismissed with the consent of the Government.

5. This is his second application. In March, 1960 Tateo, appearing pro se, moved to vacate the sentence essentially upon the ground that he had withdrawn from the conspiracy prior to its completion, in consequence of which he was not guilty of the charges to which he had pleaded, and further that the plea had been entered "in ignorance and

voluntary, but was the product of coercive influence generated by the Trial Judge's statement in the midst of trial that if the defendant continued with the trial and were found guilty, the Court would impose a life sentence upon the kidnapping charge and maximum consecutive sentences on each of the remaining four counts to be served consecutively to the life term.

The defendant, his former attorney and his sister testified at the hearing. On the fourth trial day before the taking of testimony was resumed, the Judge called a robing room conference at which were present Tateo's attorney, the attorneys representing the codefendant, Angelo John, and the two Assistant United States Attorneys who were prosecuting the case. The Court, according to the testimony of Tateo's attorney, stated to the defense attorneys:

" * * * I think I ought to tell you this. If you finish the trial and your clients are found guilty, I'm going to start off by imposing a life sentence on the kidnapping charge and then I'm going to add consecutive maximum sentences on the other counts on which they are found guilty."

The Trial Judge further stated, according to the attorney, that whatever might be thought by others about sentences in excess of life imprisonment, nonetheless that was what he was going to do, and told them to "think it over." This conference took place after substantial evidence during three days of testimony had been given against the defendant by the codefendant Paisner who, after pleading guilty, had testified as a Government witness, and by Tateo's paramour.

The trial was recessed. Tateo's counsel swore that at once he conveyed to his client exactly what the Judge had said. In response to the defendant's request for his opinion, his counsel expressed the

view, on the basis of the testimony already received, that the Government's case was strong; that there was an excellent chance of conviction, and that he urged Tateo rather strongly to plead guilty. He further testified that he spent about half an hour discussing the situation with the defendant and that during this half hour the defendant mulled it over. Finally, the defendant said he wanted to get it off his chest and would go along with his lawyer's advice to plead guilty. Up to this time, the attorney testified, there had been no conversations between him and his client as to a change of plea, and that it was the Trial Judge's statement which directly led to the discussion about the withdrawal of the not guilty plea. On cross-examination by Government counsel, the attorney admitted he did not advise his client not to plead guilty because he had been threatened by the Court, although he regarded the Court's statement as unfair and pretty close to a threat.

The defendant testified that during a recess on the fourth day of trial his attorney said to him, "I can't let you continue with the trial," and then informed him of the Judge's statement substantially as testified to by his trial counsel; that his counsel also told him that under such a sentence he would never get out of prison, and urged him to plead guilty, saying, "I can't gamble with your life. We can't go on with the trial; I won't let you." He further testified that he understood a life sentence plus consecutive sentences to mean that he would never get out of jail and that he was not informed the Court was without power under the Federal Bank Robbery Act to impose consecutive sentences. His counsel likewise swore this matter was not discussed. Finally, the defendant swore that it was the Trial Judge's statement and the persuasion of his lawyer based thereon that caused him to withdraw his original plea of not guilty and to plead guilty.

* * * misapprehension of the law" and by reason of inadequate representation by counsel. This motion was with-

drawn in open court on July 20, 1960 as defendant retained counsel.

Defendant also testified that within five or ten minutes after this initial conference with his lawyer, he was importuned by his wife and sister to accept his lawyer's advice and to plead guilty in view of his report to them about the Judge's statement. The defendant's sister testified that both she and his wife entreated him to plead guilty because of the information which the attorney had conveyed as to the Court's statement and the lawyer's position that he could not gamble with the defendant's life.

The record indicates that the plea of guilty was entered shortly after the robing room conference.[6] The defendant, when questioned by the Trial Judge, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, to ascertain whether the plea of guilty was voluntary and understandingly entered, acknowledged that it was made freely and without coercion or duress. He contends, however, that in fact the fear of spending the rest of his life in prison under a life sentence plus consecutive sentences led him to plead guilty; that it was not a voluntary, but a coerced plea.

The Government called no witness to challenge the attorney's testimony as to what the Trial Judge had told him or that, in turn, he had conveyed the message to the defendant. To be sure, there are some inconsistencies between the testimony of the lawyer and that of his former client. The lawyer denies he ever told the defendant, as the latter testified, to answer agreeably when questioned by the Court as to the voluntariness of the plea or the absence of duress, coercion, or any promises. The attorney also did not recall that he told the relator he would not allow him to gamble with his life, or that before the entry of the plea of guilty he had informed the defendant's relatives

of the Court's statement; he believed that he had conveyed this information to them after the plea of guilty. However, these matters are not of material significance on the issue presented by petitioner's motion, since his fundamental claim that the Trial Judge made the statement attributed to him has been fully established and is not controverted. Indeed, the Government, for the purposes of this motion, assumes that the statement was made and transmitted to Tateo, but contends that notwithstanding, his plea of guilty was voluntary.

The issue presented falls within a narrow compass, to wit, whether the statement by the Trial Judge made and conveyed to the defendant before the completion of the Government's case, but after substantial evidence to support the indictment charges had been presented, that if the defendant proceeded with the trial and were found guilty, the Trial Judge would impose maximum and consecutive sentences upon the various counts of the indictment, which the defendant was advised by his lawyer and which he understood meant actual life imprisonment, resulted in a coerced plea either as a matter of law or upon the facts, or both.

To further confine the issue, some preliminary observations are in order. The defendant's guilt or innocence is not in issue on this motion. And neither the passage of time nor the absence of any showing that in the event of a new trial a different result is likely requires the denial of the defendant's motion.[7] Moreover, the fact that the defendant in open court at the time of the entry of the plea stated that it was not coerced, while evidential on the issue, does not foreclose inquiry as to its voluntariness.[8]

6. S.M. 338, 339 (May 21, 1956).

7. See Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956) ; United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) ; United States v. Morgan, 222 F.2d 673 (2d Cir., 1955) ; Haywood

v. United States, 127 F.Supp. 485 (S.D. N.Y.1954).

8. Cf. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) ; United States v. Lester, 247 F.2d 496 (2d Cir., 1957) ; United States v. Shillitani, 16 F.R.D. 336 (S.D.N.Y.

A defendant has a fundamental right to stand trial and to require the Government to establish the charges against him in accordance with substantive and procedural due process requirements of the Federal Constitution. A defendant may, of course, obviate the required proof of his guilt by a plea of guilty, which has the conclusive force of a jury's verdict of guilty. However, an accused's plea may be accepted only if it is made voluntarily and knowingly. And if it appears that a guilty plea is the product of coercion, either mental or physical, or was "unfairly obtained or given through ignorance, fear or inadvertence," [9] it must be vacated as void since it is violative of constitutional safeguards. A conviction which rests upon a coerced plea of guilty, no less than one which rests upon a coerced confession, is inconsistent with due process of law.[10]

The issue of whether the guilty plea was in fact voluntary or the product of mental coercion cannot be determined with mathematical precision. Of necessity we deal in probabilities in deciding whether the defendant, at the time he pled guilty, had that free will essential to a reasoned choice either to continue with the trial or to enter a plea of guilty.[11] Its determination involves an evaluation of psychological factors and elements that may be reasonably calculated to influence the human mind. And while probing the human mind is beyond the ken of the average layman and indeed that of the average judge, the issue of the state of a man's mind is to be decided by the trier of the fact, whether court or jury, just as any other fact issue—the reasonable inferences to be drawn from all the surrounding facts and circumstances.[12]

A crucial question is what impact the Court's statement had upon the defendant; how he understood it and whether his understanding was reasonable under all the attendant circumstances.[13] It can hardly be questioned but that most persons on trial upon criminal charges are in a state of mental tension and great apprehension.[14] This strain is deepened as the trial progresses and as evidence supporting the charges is offered by the Government. This subjective reaction cannot be disregarded in appraising whether or not the defendant had the required free will of mind at the time of his guilty plea.

The choice open to this defendant when apprised during the trial of the Court's statement was rather severely limited. If, as was his constitutional right, he continued with the trial and were found guilty, he faced, in the light of the Court's announced attitude, the imposition of a life sentence upon the kidnapping charge, plus additional time upon the other counts, a sentence which his lawyer informed him and which he believed, not without reason, meant life

1954). See also, Walker v. Johnston, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830 (1941). See generally, United States v. Davis, 212 F.2d 264 (7th Cir., 1954).

9. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

10. Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942). See Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Compare Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S. Ct. 1, 69 L.Ed. 131 (1924).

11. Cf. Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

12. Cf. United States v. Charnay, 211 F. Supp. 904 (S.D.N.Y.1962); Edgington v. Fitzmaurice, 29 Ch.D. 459, 483 (1885) quoted in Bon–R Reproductions, Inc. v. N. L. R. B., 309 F.2d 898, 909 (2d Cir., 1962) (Friendly, J., concurring and dissenting).

13. See United States v. Lester, 247 F.2d 496 (2d Cir., 1957).

14. Cf. United States v. Kahaner, 203 F. Supp. 78, 87 (S.D.N.Y.1962), appeal docketed, Sept. 11, 1962, No. 27784.

imprisonment.[15] On the other hand, if he withdrew his plea of not guilty, there was the likelihood, although no claim is made of any specific promise, of a substantially lower sentence, since it had been indicated that the kidnapping charge would be dismissed, as it was eventually.[16]

■ It is not claimed—and it is immaterial—that the Trial Judge's statement was designed either to mislead the defendant or to induce his plea of guilty. The question is whether it did have that impact.

The statement by the Court itself had overbearing force. That it had a subtle but nonetheless powerful influence upon the defendant can hardly be questioned. But adding even greater weight to it was the fact, not challenged by the Government, that under the Federal Bank Robbery Act the Court lacked power to impose consecutive sentences to follow that imposed under the kidnapping count.[17] Moreover, this circumstance itself, apart from any question of its coercive nature, raises a substantial question as to whether the plea was understandably made.[18]

We are not here concerned with a situation much debated among the Courts of Appeals, in which some statement, activity, promise or threat of the prosecution has allegedly vitiated the voluntariness of a plea of guilty.[19] Nor is this a

15. That the view of his counsel and the defendant that such a sentence meant virtual life imprisonment was not unrealistic is underscored by the statement made by the Trial Judge at the time of sentence of the petitioner and his codefendants. The Court, in sentencing the defendant John, said, " * * * I am morally certain that there would have been a conviction on all counts, and I am just as certain that I would have given John the maximum on each count consecutively, which would be a long time in jail. It would be sixty-five years in jail to follow a life sentence on the kidnapping charge." (S.M. 372–73) (June 5, 1956.)

" * * * [A]nd I want you to know that I was very serious and earnest when I said that if you had been convicted by the jury I intended to give you the absolute maximum sentence, a life sentence plus all of these years to follow the life sentence.

"If anybody wonders how one can serve a sentence after he has served a life sentence, it is very simple, because in a life sentence you are eligible for parole in 15 years; but with a sentence to follow a life sentence, you are not eligible for parole on the life sentence, and you have to stay in jail for the rest of your life." (S.M. 375) (June 5, 1956.)

16. At the start of the trial the prosecution announced that it would not ask for the death penalty under the kidnapping count.

17. United States v. Drake, 250 F.2d 216 (7th Cir., 1957); Simunov v. United States, 162 F.2d 314 (6th Cir., 1947). Cf. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959);

Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); United States v. Di Canio, 245 F.2d 713 (2d Cir.), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957); United States v. Tarricone, 242 F.2d 555 (2d Cir., 1957). Contra, Clark v. United States, 281 F.2d 230 (10th Cir., 1960). See also, Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L. Ed.2d 773 (1961); Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L. Ed.2d 670 (1961); United States v. Poindexter, 293 F.2d 329 (6th Cir., 1961), cert. denied, 368 U.S. 961, 82 S. Ct. 406, 7 L.Ed.2d 392 (1962); United States v. Donovan, 242 F.2d 61 (2d Cir., 1957). Compare United States v. Parker, 181 F.Supp. 73 (N.D.Ind.), aff'd, 283 F.2d 862 (7th Cir., 1960), cert. denied, 366 U.S. 937, 81 S.Ct. 1663, 6 L.Ed. 2d 848 (1961); United States v. Jakalski, 267 F.2d 609 (7th Cir. 1959), cert. denied, 362 U.S. 936, 80 S.Ct. 759, 4 L.Ed. 2d 751 (1960).

18. Compare United States v. Paglia, 190 F.2d 445 (2d Cir., 1951), expressly overruled on other grounds, United States v. Taylor, 217 F.2d 397 (2d Cir., 1954).

19. Heideman v. United States, 281 F.2d 805 (8th Cir., 1960); Bone v. United States, 277 F.2d 63 (8th Cir., 1960); Kent v. United States, 272 F.2d 795 (1st Cir., 1959); Teller v. United States, 263 F.2d 871 (6th Cir., 1959); Martin v. United States, 256 F.2d 345 (5th Cir.), cert. denied, 358 U.S. 921, 79 S.Ct. 294, 3 L.Ed.2d 240 (1958); Booth v. United States, 251 F.2d 296 (9th Cir., 1958); Shelton v. United States, 242 F.2d 101, rev'd en banc, 246 F.2d 571 (5th Cir.,

situation where a defendant and his lawyer accept the realities of fact as developed during the progress of a trial, recognize the force of the Government's case, consult with one another and then the defendant makes a deliberate and measured choice.[20] In such circumstances a defendant and his attorney act upon their appraisal of the evidence and the defendant makes his choice accordingly. Whatever his decision, whether to plead guilty or to continue with the trial, if found guilty the prospective sentence is an unknown quantity yet to be determined by the Trial Judge after an evaluation of all significant factors which normally are considered before sentence is imposed. In the instant case there is an added and distinguishing fact—the Court's announcement during the trial and in advance of a verdict of what sentence he would impose in the event of conviction.

With the normal strain under which a defendant labors during a trial, greatly intensified by the cumulative impact of the testimony offered against petitioner by his codefendant, who had become a Government witness, the Court's advance announcement of the prospective sentence and, based thereon, the strong urging of his own counsel to plead guilty, it is difficult to believe that the defendant had that capacity for reasoned choice, that freedom of will which is essential to a voluntary plea of guilty.[21]

No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial and to establish guilt by independent evidence should not be exercised under the shadow of a penalty[22] —that if he persists in the assertion of his right and is found guilty, he faces, in view of the Trial Court's announced intention, a maximum sentence, and if he pleads guilty, there is the prospect of a substantially reduced term. To impose upon a defendant such alternatives amounts to coercion as a matter of law.[23] Such was the holding in Euziere v. United States[24] upon substantially similar facts. There the Court, upon the defendants' arraignment, announced that in the event they stood trial and were found guilty, the Court would expect to impose the maximum sentences; the Court stated at the time of sentencing that that would have meant sixty years. Significantly, the Court of Appeals not only reversed the denial of the defendants' motion under section 2255, but *without remanding it for a hearing* vacated and set aside the judgment of conviction, stating:

> "We think it is clear that the statements made by the trial court were reasonably calculated to influence the defendants to the point of

1957); rev'd on confession of error by the Solicitor General, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958); United States v. Paglia, 190 F.2d 445 (2d Cir., 1951), expressly overruled on other grounds, United States v. Taylor, 217 F.2d 397 (2d Cir., 1954).

20. Cf. United States v. Monti, 100 F.Supp. 209 (E.D.N.Y.1951).

21. Cf. Haley v. Ohio, 332 U.S. 596, 606, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (opinion of Frankfurter, J.).

22. United States v. Wiley, 278 F.2d 500, 504 (7th Cir., 1960). See generally, United States v. Wiley, 267 F.2d 453 (7th Cir., 1959); United States v. Wiley, 184 F.Supp. 679 (N.D.Ill.1960).

23. See People v. Guariglia, 303 N.Y. 338, 102 N.E.2d 580 (1951); People v. Banner, 5 Misc.2d 355, 164 N.Y.S.2d 53 (Otsego Cty.Ct.1957) (dictum), rev'd, 5 N.Y.2d 109, 180 N.Y.S.2d 292, 154 N.E. 2d 553 (1958). Cf. People v. Farina, 2 N.Y.2d 454, 161 N.Y.S.2d 88, 141 N.E.2d 589 (1957); People v. Goldstein, 1 App. Div.2d 1044, 152 N.Y.S.2d 330 (2d Dept. 1956). See also, United States v. Lias, 173 F.2d 685 (4th Cir., 1949); People v. Brown, 54 Mich. 15, 19 N.W. 571 (1884); People v. Sullivan, 276 App.Div. 1087, 96 N.Y.S.2d 266 (2d Dept. 1950).

24. 249 F.2d 293 (10th Cir., 1957).

568

coercion into entering their pleas of guilty." [25]

The Government here professes to see some distinction upon the facts, such as the statement was made before and not during trial and before rather than while they were represented by counsel. The defendants did have counsel when the plea was entered. This Court sees no essential distinction; if anything, the factual situation in the instant case is even stronger in view of the substantial evidence already received against the defendant.

■ The Court is also persuaded that upon all the facts the defendant has carried his burden of proof. The realities of human nature and common experience compel the conclusion that the defendant was enveloped by a coercive force resulting from the knowledge conveyed to him of the Court's attitude as to sentence which, under all the circumstances, foreclosed a reasoned choice by him at the time he entered his plea of guilty. On the one hand, he was influenced by fear that if he adhered to his right to continue with the trial, if convicted, imprisonment for the rest of his life would follow; and on the other hand, by the hope that if he abandoned trial and pled guilty, he would receive a substantially lesser sentence, particularly in view of the implicit understanding between the Government and defense that the kidnapping charge, the only one under which a life sentence was permissible, would be dropped.[26] The pressures brought about by such a situation are irreconcilable with the exercise of that free will essential to a voluntary plea of guilty.

In sum, the Court concludes that as a matter of law and upon the facts here presented, the defendant's plea of guilty was not voluntary and free from coercion; accordingly, the motion to vacate and set aside the judgment of conviction entered thereon and for a new trial is granted.

25. Id. at 295.

26. Compare United States ex rel. Leyra v. Denno, 208 F.2d 605, 615 (2d Cir.,

1953) (Frank, J., dissenting), rev'd, 347 U.S. 556, 74 S.Ct. 716, 93 L.Ed. 948 (1954).