**UNITED STATES of America,**

**v.**

**Rocco TATEO, Defendant.**

United States District Court
S. D. New York.
May 3, 1963.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, Peter E. Fleming, Jr., and Charles A. Stillman, Asst. U. S. Attys., of counsel, for the United States.

O. John Rogge, and Robert Kasanof, New York City, for defendant.

TYLER, District Judge.

Rocco Tateo, who is presently scheduled to go to trial on May 6, 1963 upon the above two indictments charging offenses arising under the federal bank robbery statute, has made several motions to dismiss these indictments. His principal motion, which will be treated in this opinion, presents a serious question relating to the meaning and application of the provision of the Fifth Amendment to the Constitution declaring that no person shall " * * * be subject for the same offence to be twice put in jeopardy of life or limb * * * ".

To put the double jeopardy questions here presented in proper perspective, it is necessary to summarize the previous history of this case.

On March 2, 1956, the County Trust Company branch bank in Port Chester, New York, was robbed of approximately $188,000. Thereafter, on March 30, 1956, a grand jury sitting in this district indicted three individuals, Arthur Paisner, Angelo John and Rocco Tateo, for various offenses arising out of this robbery. The indictment, No. C 149–341, contained five counts which charged bank robbery by force and violence (18 U.S.C. § 2113(a)); taking and carrying away with intent to steal (18 U.S.C. § 2113(b)); receiving and possessing the proceeds of the bank robbery (18 U.S. C. § 2113(c)); kidnapping in connection with the robbery (18 U.S.C. § 2113(e)); and a conspiracy to commit the substantive offenses (18 U.S.C. § 371).

Prior to trial of this first indictment, No. C 149–341, defendant Arthur Pais-

ner pleaded guilty to all counts except the kidnapping count. On May 15, 1956, the trial commenced under this indictment as to the two remaining defendants before a judge of this court and a jury. After four days of trial, during which a jury was selected and impanelled and testimony was taken, defendant Tateo withdrew his plea of not guilty and on May 21, 1956 pleaded guilty to all counts, with the exception of the kidnapping count. The following day, May 22, 1956, defendant Angelo John did likewise; on the same day the jury was discharged.

On June 5, 1956, all defendants were sentenced by the trial judge, who imposed a total sentence upon Tateo of 22 years and 6 months as follows: robbery by force and violence—20 years; taking and carrying away with intent to steal—10 years; receiving and possession—10 years; and conspiracy—2 and ½ years. The three substantive count sentences were to run concurrently with each other, and the sentence for conspiracy was to run consecutively thereafter.

As soon as this sentence had been imposed on June 5, 1956, and in accordance with ordinary routine followed in this district, Tateo's counsel moved to dismiss the kidnapping count. Upon consent of the prosecution, this motion was granted. Tateo was immediately remanded.

He remained in prison, serving the imposed sentence, until shortly after February 8 of this year, on which date another judge of this court granted Tateo's motion pursuant to 28 U.S.C. § 2255 to vacate and set aside the judgment of conviction on the ground that Tateo's plea of guilty, entered on May 21, 1956, had been "coerced" by a statement or statements of the trial judge. United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y. 1963).[1] On March 28, 1963, some weeks after that order had been entered, another grand jury sitting in this district.

1. Although the order setting aside the judgment of conviction is expressly responsive to Tateo's "motion to vacate and * * * for a new trial", 214 F. Supp., at p. 568; cf., 28 U.S.C. § 2255, the record makes clear that the court did not have before it, and did not intend to pass upon, the merits of the issue decided herein.

returned an indictment, No. 63 Cr. 299, of one count against Rocco Tateo. This count is substantially the same as the original kidnapping count.

The government's position, in its papers in opposition to the defendant Tateo's present motion, is that the February 8, 1963 order automatically reinstated the four counts of indictment No. C 149–341 to which Tateo pleaded guilty, but may not have re-instated the kidnapping count, since that count had been dismissed on June 5, 1956 upon Tateo's motion and with consent of the government. Further, it is the government's theory that since the kidnapping subsection (Section 2113(e)) of the federal bank robbery statute provides a penalty of death upon recommendation of the jury after conviction, this is thus a capital charge and not barred by statute of limitations.

At the first hearing and argument of this motion by defendant, both his papers and those of the government focused entirely upon the double jeopardy question inherent in the "revival" of the kidnapping count. As the argument developed, this court informed all counsel that in its view a substantial double jeopardy question might also be presented respecting those counts to which Tateo pleaded guilty on May 21, 1956 after some four days of trial before a jury. Accordingly, further briefs were submitted and a re-argument was had on April 26, 1963 on all aspects of the double jeopardy problem presented by this case. Essentially, this problem breaks down into two questions:[2]

1. Will a trial of Tateo upon Indictment No. 63 Cr. 299 work an unconstitutional second jeopardy for the crime charged in Count 3 (the kidnapping count) of Indictment No. C 149–341, which was dismissed on June 5, 1956?

2. Will a new trial of Tateo upon Counts 1, 2, 4 and 5 of No. C 149–341,

to which Tateo made his coerced plea of guilty, work an unconstitutional second jeopardy?

This court is constrained to hold that both questions must be answered in the affirmative.

This case is crucially different from the usual instance in which a conviction is set aside under 28 U.S.C. § 2255 and a new trial is not barred by the principle of double jeopardy. The critical distinguishing factor is that Tateo's trial commenced but was not completed.

■ The principle of double jeopardy made controlling by this fact is that retrial after the termination-before-verdict of a prior trial is barred unless the termination was either consented to or based upon "exceptional circumstances".

■ Since neither constitutionally sound consent nor an "exceptional circumstance" underpinned the termination here, a second trial is constitutionally impermissible.

Federal courts, in seeking to safeguard a defendant's "valued right * * to have his trial completed by the particular tribunal summoned to sit in judgment on him", Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, have been guided by the strictures of Mr. Justice Story who, in writing for a unanimous Supreme Court in 1824, said:

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render

2. Defense counsel also urge that re-trial of Counts 2 and 4 of No. C 149–341 is barred by the circumstance that Tateo has completed the mandatory portions of the concurrent ten year sentences im-

posed on these counts on May 21, 1956. United States v. Bayless, 147 F.2d 171 (8th Cir. 1945). I do not reach this issue.

it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public has for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." (United States v. Perez, 9 Wheat. 579, at p. 580, 6 L.Ed. 165 (1824)).

According to the record, the trial judge made his statements, which have been found to have had a coercive effect upon Tateo, on Friday, May 18, 1956. On the following Monday Tateo entered his plea of guilty. The jury was discharged the next day, Tuesday, May 22.

■ Realistically, Tateo's consent to termination cannot be separated from his decision to plead guilty. The sole decision which Tateo faced was whether to finish the trial in the hope of a jury acquittal, or to plead guilty at once. Since it has been judicially determined that Tateo's plea of guilty was coerced by statements of the trial judge, it follows that he was coerced from availing himself of his Fifth Amendment right to go to the original jury for its verdict of guilt or innocence. Nor can the dismissal of the original kidnapping count, insofar as it depended upon the decision or "consent" of Tateo, be deemed anything but an incident of this same coerced plea of guilty.

■ With regard to the "exceptional circumstances" principle, it is sufficient that acceptance of the coerced guilty plea, and, in a sense, the very inducement of it as well, constituted error, whether termed error of fact, of law, or of both. Hence this cannot in reason be the basis for that "imperious necessity", Downum v. United States, supra, 372 U. S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100, which must be present to justify the termination.

■ Finally, the government especially argues that Tateo "waived" his right to be secure from double jeopardy by successfully attacking his conviction. But in United States v. Green, 355 U.S. 184, 192, 78 S.Ct. 221 (1957), the Supreme Court endorsed the view expressed by Justice Holmes, dissenting in Kepner v. United States, 195 U.S. 100, 135, 24 S.Ct. 797, 49 L.Ed. 114 (1904), that where double jeopardy is at issue, "It cannot matter that the prisoner procures the second trial."

For, as Justice Holmes went on to state in the passage quoted by the court in Green: " * * * [I]t cannot be imagined that the law would deny to a prisoner the correction of a fatal error, unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States." 195 U.S. at p. 135,[3] 24 S.Ct. at p. 807.

The Supreme Court has stated, in Downum v. United States, supra, 372 U. S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed. 2d 100:

"Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches. Gori v. United States, supra, 367 U.S. 369, 81 S.Ct. 1526–1527, 6 L.Ed.2d 901. But those extreme cases do not mark the limits of the guarantee."

The recent decision in Downum makes clear that individual applications of the

3. Just as the defendant in Green was held not to have waived his right to be secure from re-trial after there had been an acquittal, so I hold here that Tateo has not waived his right to be secure from retrial after there has been an improper termination.

rule of double jeopardy do not hinge upon a finding of prejudice to the defendant beyond that prejudice which inheres in foreclosing him forever from the chance to be acquitted by the tribunal before whom he is first placed in jeopardy. United States v. Perez, 9 Wheat. 579, 6 L.Ed.2d 165 (1824). The result here reached is thus compelled completely without regard either for the possible guilt of Tateo or for the unquestionably high purpose which prompted the trial judge to act as he did on May 18 and 21, 1956.[4]

Accordingly, it is determined that Indictments No. C 149–341 and No. 63 Cr. 299 must be dismissed as against Rocco Tateo.

Settle order in accordance with the foregoing for submission to this court for signature at 10:00 a. m. on May 8, 1963.

---

[4.] And, similarly, without regard for the fact that the record here is devoid of any hint of error or prejudicial conduct on the part of the prosecution. Fong Foo et al. v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); Gori v. United States, 367 U.S. 364, at p. 373, 81 S.Ct. 1523, at p. 1528, 6 L.Ed.2d 901 (1961) (dissenting opinion by Douglas, J.).