377 U.S. 463 (1964)
UNITED STATES
v.
TATEO.
No. 328.
Supreme Court of United States.
Argued April 20, 1964.
Decided June 8, 1964.
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.
Beatrice Rosenberg argued the cause for the United States. With her on the brief were Solicitor General Cox, Assistant Attorney General Miller, Philip B. Heymann and Jerome Nelson.
Robert Kasanof argued the cause for appellee. With him on the brief was O. John Rogge.
MR. JUSTICE HARLAN delivered the opinion of the Court.
This case presents the question whether a federal criminal defendant who has had his conviction overturned in collateral proceedings on the ground that a guilty plea entered by him during trial was not voluntary but induced in part by comments of the trial judge, may be tried again for the same crimes or is protected against such *464 a prosecution by the Double Jeopardy Clause of the Fifth Amendment. We hold that under these circumstances retrial does not infringe the constitutional protection against double jeopardy.
On May 15, 1956, the appellee, Tateo, and another were brought to trial before a jury on a five-count indictment charging bank robbery (18 U. S. C. § 2113 (a)); kidnaping in connection with the robbery (18 U. S. C. § 2113 (e)); taking and carrying away bank money (18 U. S. C. § 2113 (b)); receiving and possessing stolen bank money (18 U. S. C. § 2113 (c)); and conspiracy (18 U. S. C. § 371) to commit some of these substantive offenses. On the fourth day of trial, the judge informed Tateo's counsel that if Tateo were found guilty by the jury he would impose a life sentence on the kidnaping charge and consecutive sentences on the other charges. Upon being told of the judge's position and advised by his counsel that the likelihood of conviction was great, Tateo pleaded guilty, as did his codefendant. Thereupon the jury was discharged; the kidnaping count was dismissed with the prosecution's consent; and Tateo was sentenced to a total of 22 years and 6 months imprisonment on the other counts.
In a later proceeding under 28 U. S. C. § 2255, another district judge (Judge Weinfeld) granted Tateo's motion to set aside the judgment of conviction and for a new trial, determining that the cumulative impact of the trial testimony, the trial judge's expressed views on punishment, and the strong advice given by his counsel rendered it doubtful that Tateo possessed the freedom of will necessary for a voluntary plea of guilty. 214 F. Supp. 560.
After being reindicted on the kidnaping charge, Tateo was brought before a third district judge (Judge Tyler) for trial on that charge and the four bank robbery charges to which he had earlier pleaded guilty. Upon motions by the defense, Judge Tyler dismissed both the *465 kidnaping count, now abandoned by the Government, and the other four counts. He reasoned that, since neither genuine consent nor an "exceptional circumstance" underlay the termination of the first trial and no "waiver" of the double jeopardy claim had been made by Tateo, the Government was precluded from retrying him. 216 F. Supp. 850. The Government appealed, in accord with 18 U. S. C. § 3731, which permits direct appeal to this Court from a decision of a District Court sustaining a motion in bar before the defendant has been put in jeopardy. We noted probable jurisdiction, 375 U. S. 877. For reasons given below, we reverse the judgment of the District Court.
The Fifth Amendment provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The principle that this provision does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence. In this respect we differ from the practice obtaining in England. The rule in this country was explicitly stated in United States v. Ball, 163 U. S. 662, 671-672, a case in which defendants were reindicted after this Court had found the original indictment to be defective. It has been followed in a variety of circumstances; see, e. g., Stroud v. United States, 251 U. S. 15 (after conviction reversed because of confession of error); Bryan v. United States, 338 U. S. 552 (after conviction reversed because of insufficient evidence); Forman v. United States, 361 U. S. 416 (after original conviction reversed for error in instructions to the jury).[1]
*466 That a defendant's conviction is overturned on collateral rather than direct attack is irrelevant for these purposes, see Robinson v. United States, 144 F. 2d 392, 396, 397, aff'd on another ground, 324 U. S. 282. Courts are empowered to grant new trials under 28 U. S. C. § 2255, and it would be incongruous to compel greater relief for one who proceeds collaterally than for one whose rights are vindicated on direct review.
While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest. The underlying purpose of permitting retrial is as much furthered by application of the rule to this case as it has been in cases previously decided.
Tateo contends that his situation must be distinguished from one in which an accused has been found guilty by a jury, since his involuntary plea of guilty deprived him of the opportunity to obtain a jury verdict of acquittal. We find this argument unconvincing. If a case is reversed because of a coerced confession improperly admitted, a *467 deficiency in the indictment, or an improper instruction, it is presumed that the accused did not have his case fairly put to the jury. A defendant is no less wronged by a jury finding of guilt after an unfair trial than by a failure to get a jury verdict at all; the distinction between the two kinds of wrongs affords no sensible basis for differentiation with regard to retrial.[2] Appellee's argument is considerably less strong than a similar one rejected in Bryan v. United States, supra. In that case the Court held that despite the Court of Appeals' determination that defendant had been entitledbecause of insufficiency in the evidenceto a directed verdict of acquittal, reversal of the conviction with a direction of a new trial was a permissible disposition.
Downum v. United States, 372 U. S. 734, is in no way inconsistent with permitting a retrial here. There the Court held that when a jury is discharged because the prosecution is not ready to go forward with its case, the accused may not then be tried before another jury. The opinion recognized, however, that there are circumstances in which a mistrial does not preclude a second trial, see, e. g., United States v. Perez, 9 Wheat. 579 (jury unable to agree); Simmons v. United States, 142 U. S. 148 (likelihood that a juror subject to bias). In Gori v. United States, 367 U. S. 364, we sustained a second conviction after the original trial judge declared a mistrial on the ground of possible prejudice to the defendant, although the judge acted without defendant's consent and the wisdom of granting a mistrial was doubtful. If Tateo had requested a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him. See Gori v. United States, 367 *468 U. S., at 368; see also 367 U. S., at 370 (dissenting opinion of DOUGLAS, J.).[3] Although there may be good reasons why Tateo and his counsel chose not to make such a motion before the trial judge, it would be strange were Tateo to benefit because of his delay in challenging the judge's conduct.[4]
We conclude that this case falls squarely within the reasoning of Ball and subsequent cases allowing the Government to retry persons whose convictions have been overturned. The judgment below is therefore reversed and the case remanded to the District Court with instructions to reinstate the four bank robbery counts.
It is so ordered.
MR. JUSTICE GOLDBERG, with whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.
I would affirm the District Court's holding, 216 F. Supp. 850, that under our decision last term in Downum v. *469 United States, 372 U. S. 734, the Double Jeopardy Clause of the Fifth Amendment protects Tateo against reprosecution. The Court today departs from Downum and in so doing substantially weakens the constitutional guarantee. Downum was correctly decided and deserves a life longer than that accorded it by the decision today. Rather than making any real effort to distinguish Downum, the Court limits it to its particular facts and reaffirms, indeed extends, the doubtful holding of the narrow majority in Gori v. United States, 367 U. S. 364[1]a holding which, in my view, departs from Downum's more hospitable attitude toward the "policy of the Bill of Rights . . . to make rare indeed the occasions when the citizen can for the same offense be required to run the gantlet twice." Gori v. United States, supra, at 373 (DOUGLAS, J., dissenting).[2] A comparison of the facts and rationale of Downum with those here reveals that this case calls more loudly than Downum for protection against double jeopardy.
In Downum, on the morning the case was called for trial both sides announced ready. A jury was selected, sworn, and instructed to return at 2 p. m. When it returned the prosecution asked that the jury be discharged because its key witness on two counts of the indictment was not presenta fact discovered by the prosecutor only during the noon recess. It was not contended that the failure to secure the attendance of this witness was in any way deliberate or based upon the prosecutor's conclusion *470 that the impaneled jury was likely to acquit. Instead, the "jury first selected to try petitioner and sworn was discharged because a prosecution witness had not been served with a summons and because no other arrangements had been made to assure his presence." Downum v. United States, supra, at 737. In sustaining the claim of double jeopardy as to a retrial commenced two days later, this Court said:
"At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interestwhen there is an imperious necessity to do so. Wade v. Hunter, supra, 690. Differences have arisen as to the application of the principle. See Brock v. North Carolina, 344 U. S. 424; Green v. United States, 355 U. S. 184, 188. Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches. Gori v. United States, supra, 369. But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised `only in very extraordinary and striking circumstances,' to use the words of Mr. Justice Story in United States v. Coolidge, 25 Fed. Cas. 622, 623. For the prohibition of the Double Jeopardy Clause is `not against being twice punished, but against being twice put in jeopardy.' United States v. Ball, 163 U. S. 662, 669." Id., at 736.
The Court further said:
"We resolve any doubt `in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.' " Id., at 738.
*471 The Court thus held that Downum could not be reprosecuted, since, by virtue of prosecutorial neglect, he was denied his constitutional right to have the impaneled jury hear and decide his case.
In the present case, after four days of trial, the trial judge, as he put it at the time of sentencing, told defendant's counsel:
". . . [If he is convicted] by the jury I [intend] to give [him] the absolute maximum sentence, a life sentence plus all of these years to follow the life sentence.
"If anybody wonders how one can serve a sentence after he has served a life sentence, it is very simple, because in a life sentence you are eligible for parole in fifteen years; but with a sentence to follow a life sentence, you are not eligible for parole on the life sentence, and you have to stay in jail for the rest of your life."
As a result of this coercion by the trial judge, Tateo entered a plea of guilty and was sentenced to imprisonment for 22 years and 6 months.
After Tateo served almost seven years in prison, District Judge Weinfeld granted his motion under 28 U. S. C. § 2255 to vacate the conviction. Judge Weinfeld found that:
"The choice open to this defendant when apprised during the trial of the Court's statement was rather severely limited. If, as was his constitutional right, he continued with the trial and were found guilty, he faced, in the light of the Court's announced attitude, the imposition of a life sentence upon the kidnapping charge, plus additional time upon the other counts, a sentence which his lawyer informed him and which he believed, not without reason, meant life imprisonment." 214 F. Supp., at 565-566.
.....

*472 "No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial and to establish guilt by independent evidence should not be exercised under the shadow of a penaltythat if he persists in the assertion of his right and is found guilty, he faces, in view of the Trial Court's announced intention, a maximum sentence, and if he pleads guilty, there is the prospect of a substantially reduced term." Id., at 567.
.....
"The realities of human nature and common experience compel the conclusion that the defendant was enveloped by a coercive force resulting from the knowledge conveyed to him of the Court's attitude as to sentence which, under all the circumstances, foreclosed a reasoned choice by him at the time he entered his plea of guilty." Id., at 568.
Tateo was thereupon re-indicted by the Government and brought before Judge Tyler for retrial. Judge Tyler sustained defense motions to dismiss the indictment and ordered Tateo discharged from prison just one month short of seven years after the original sentence.
Judge Tyler found that Tateo "was coerced from availing himself of his Fifth Amendment right to go to the original jury for its verdict of guilt or innocence." 216 F. Supp., at 853. Applying Downum, Judge Tyler held that "[s]ince neither constitutionally sound consent nor an `exceptional circumstance' underpinned the termination here, a second trial is constitutionally impermissible." Id., at 852.
The Government does not, and indeed cannot, challenge Judge Weinfeld's and Judge Tyler's conclusion that Tateo's *473 guilty plea was coerced by the trial judge. Nor can it be contended that the injury to Tateo was less substantial than the injury to Downum. Each was deprived of his "valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U. S. 684, 689: Downum by reason of prosecutorial oversight or neglect; Tateo by reason of the trial judge's threat to impose a sentence that would make him "stay in jail for the rest of [his] life." If anything, Tateo's deprivation is more serious. The purpose of the judicial coercion in his case was to deny him the right to have the impaneled jury decide his fate, whereas this was merely the effect of the prosecutorial negligence in Downum. Moreover, Downum was not subjected to the taking of evidence, whereas Tateo's trial had been in progress for four days before its abortive ending.
The reasons advanced by the Court to support its holding are similar to the arguments presented by the Government and, in effect, rejected by the Court in Downum. The Court suggests, as the Government unsuccessfully argued in Downum, that if such double jeopardy pleas are sustained then, logically, reprosecution would have to be barred in any case where error is committed at the trial. Under the decisions of this Court, however, this is a non sequitur. In this country, contrary to English practice, a defendant may be retried after reversal because of errors at the trialincluding errors in instructions, in rulings on the evidence, in admitting confessions, or in permitting prejudicial comments or conduct by the prosecutor.[3] But, in such instances, the realities are that, notwithstanding the errors, the defendant has had a jury trial, albeit not the error-free jury trial to which by law he is entitled. Tateo, however, was deprived of his valued right to have the original jury consider *474 his case at all. Wade v. Hunter, supra. Any experienced trial lawyer aware of the realities of jury trials will recognize the difference between the two cases. Many juries acquit defendants after trials in which reversible error has been committed, and many experienced trial lawyers will forego a motion for a mistrial in favor of having his case decided by the jury.
The Court says further that "[i]f Tateo had requested a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him." Ante, at 467. This completely overlooks Judge Weinfeld's unchallenged finding that Tateo was so "enveloped by [the] coercive force" of the trial judge's threat that he had no choice but to plead guilty. 214 F. Supp., at 568. To hypothesize the results of a defense request for a mistrial under these circumstances obscures the issue. Here it was the trial judge, not the defendant, who took the case away from the jury by coercing the guilty plea.
The Court also intimates that if Tateo's plea of double jeopardy is accepted then, logically, it will be necessary to bar reprosecutions under the Double Jeopardy Clause of persons whose guilty pleas, made before the jury is sworn, are ultimately found to be coerced. But again, under this Court's decisions, this does not follow. By settled interpretation the protection of the Double Jeopardy Clause does not attach before a jury is impaneled and sworn or, in a nonjury trial, before the court has begun to hear evidence.[4] Thus, the application of the double jeopardy guarantee to Tateo's case, where the plea was coerced after four days of trial, will in no way impair the settled interpretation.
*475 It is also suggested that Tateo could have proceeded to verdict and appealed the sentence. The reply to this by his counsel in this Court seems to me unanswerable: "But it would be an audacious trial lawyer indeed who would advise a client in a Federal Court to risk a life in prison without hope of parole on the basis of an appellate review of his sentence, for there is no power to review a sentence within the statutory maximum either in the Supreme Court (Gore v. United States, 357 U. S. 386, 393) or in the Court of Appeals (Pependrea v. United States, 275 F. 2d 325, 329 (C. A. 9))."[5]
The Court's final point is that its decision is necessary to protect "the societal interest in punishing one whose guilt is clear"an interest which the Court here prefers to the right of an accused not to be subjected to double jeopardy. Ante, at 466. With all deference, I suggest that the Constitution has resolved this question of competing interests of the Government and the individual in favor of protecting the individual from the harassment and danger of reprosecution. I agree with my Brother DOUGLAS dissenting in Gori v. United States, 367 U. S., at 373 that: "The question is not . . . whether a defendant is `to receive absolution for his crime' . . . . The policy of the Bill of Rights is to make rare indeed the occasions when the citizen can for the same offense be required to run the gantlet twice. The risk of judicial arbitrariness rests where, in my view, the Constitution puts iton the Government." As in Downum I would "resolve any doubt `in favor of the liberty of the citizen.' "
For these reasons, I dissent.
NOTES
[1] Green v. United States, 355 U. S. 184, does not undermine this settled practice; it holds only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged.
[2] It is also difficult to understand why Tateo should be treated differently from one who is coerced into pleading guilty before a jury is impaneled.
[3] If there were any intimation in a case that prosecutorial or judicial impropriety justifying a mistrial resulted from a fear that the jury was likely to acquit the accused, different considerations would, of course, obtain.
[4] The dissent (post, p. 474) entirely misconceives the thrust of this argument. The point is not whether one could have expected Tateo to ask for a mistrial. Rather, it is whether, if such a request had been made and either had been granted or had underlain reversal on direct review, Tateo could have been tried again. If he could have been tried again, a decision proscribing retrial if attack is collateral would mean that any lawyer worth his salt would forbear requesting a mistrial in similar circumstances, even were he certain that his position would be sustained by the trial judge or on review. That any judicial system should encourage litigants to raise objections at the earliest rather than latest possible time seems self-evident. In other words, simple logic compels the conclusion that if the Court precluded retrial here, it would also have to preclude retrial in a similar case in which a mistrial is granted. Such a result would contradict the language of both the prevailing and dissenting opinions in Gori.
[1] In Gori v. United States, 367 U. S. 364, the Court expressly refused to decide whether reprosecution would be permitted in situations "in which the discretion of the trial judge may be abused . . . or in which a judge exercises his authority to help the prosecution. . . ." Id., at 369. Here, the Court holds, in effect, that reprosecution is permissible in those situations.
[2] See Note, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1278-1279 (1964).
[3] United States v. Ball, 163 U. S. 662; Note, 77 Harv. L. Rev., at 1283.
[4] E. g., Downum v. United States, 372 U. S. 734; Cornero v. United States, 48 F. 2d 69; compare, e. g., Bassing v. Cady, 208 U. S. 386; United States v. Dickerson, 106 U. S. App. D. C. 221, 271 F. 2d 487.
[5] Whether counsel is correct in this conclusion, compare United States v. Wiley, 278 F. 2d 500; Note, 109 U. of Pa. L. Rev. 422 (1961), is beside the point; the dilemma is real under the authorities.