Ronald Ralph **PEPENDREA**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16557.

United States Court of Appeals
Ninth Circuit.

March 1, 1960.

**326**

Mary G. Creutz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, George W. Kell, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and BARNES, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

Appellant was convicted on two counts of bank robbery in violation of 18 U.S.C. § 2113(a), which, in pertinent part, reads: "Whoever, by force and violence, or by intimidation, takes * * * from the person or presence of another any * * * money * * * belonging to, or in the care, custody, control, management, or possession of, any bank * * * shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

The maximum sentence of 20 years was imposed on each count, to run consecutively, and also consecutively with a sentence imposed previously in the District of Kansas.

Appellant contends (1) that there was a fatal variance between the indictment and proof, and that his motion for judgment of acquittal accordingly should have been granted; (2) that the court erred in admitting testimony of an agent of the Federal Bureau of Investigation regarding confessions of the appellant and in admitting the confessions; and (3) that the court abused its discretion in imposing the maximum sentence on each count, to run consecutively.

The indictment charged in the first count that the appellant and another "by force and violence knowingly and wilfully took from Mrs. Carol Davis, teller, $1,474.00, belonging to" a bank; and that in committing the offense appellant and his codefendant "assaulted and put in jeopardy the life of Mrs. Carol Davis by the use of * * * a dangerous weapon * * *."[1] In the second count it was charged that the defendant, "by force and violence, knowingly and wilfully took from Mrs. Lois Marie Fox, teller, $300.-00, belonging to" another bank, and that appellant assaulted and put in jeopardy the life of Mrs. Fox in the manner charged in the first count. In response to special interrogatories, the jury found that the appellant did not "put in jeopardy the life of any person by the use of a dangerous weapon."

The testimony in support of each charge of the indictment is substantially the same. Appellant walked up to the window of the teller's cage, laid a money bag on the counter, and ordered the teller to "fill it up." In each instance the teller thought he was "kidding" or "joking." Appellant then informed the teller that he was not kidding and raised his shirt, allowing the teller to see the butt of a pistol stuck in his waistband. This was sufficient to induce each teller to fill the bag with the money in her cash drawer. Each teller testified that when appellant exposed the gun, she became frightened.

Appellant argues that while this testimony may have been sufficient to show "intimidation", it did not establish the use of "force and violence"; and since the indictment in each count was limited to the charge of "force and violence", there was a fatal variance between the charge and the proof. This contention was not raised in the trial court and was first asserted on appeal.

Was there a variance which affected the substantial rights of the appellant? Rule 52(a) Federal Rules of Criminal Procedure, 18 U.S.C., provides:

"Harmless Error. Any error, defense, irregularity or *variance* which does not affect substantial rights shall be disregarded." (Emphasis added).

Prior to the enactment of the Federal Rules of Criminal Procedure, the "harmless error" statute was § 269 of the Judicial Code as amended (28 U.S.C.A. § 391, 1946 Ed.). In construing this section in Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, the Court said:

"The true inquiry * * * is not whether there has been a variance of proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may * * * not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." (Citing cases.)

■■ There is no fixed formula for determining whether errors are "technical" or affect "substantial rights", and "In the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of stare decisis by what has been done in similar situations." Kotteakos v. United States, 1946, 328 U.S. 750, 762, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557.[2] " 'No variance

---

1. Subsection (d) of 18 U.S.C. § 2113 provides in part: "Whoever, in committing * * * any offense defined in subsection (a) * * * assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or de-

vice, shall be fined not more than $10,000, or imprisoned not more than twenty-five years, or both."

2. In Kotteakos v. United States, the Court said further: "If, when all is said and done, the conviction is sure that the er-

ought ever to be regarded as material where the allegation and proof substantially correspond or where the variance was not of a character which could have misled the defendant at the trial.' Washington & Georgetown R. Co. v. Hickey, 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101." Smiley v. United States, 9 Cir., 1951, 186 F.2d 903, 905.[3]

■ The appellant has failed to show wherein he was taken by surprise by the evidence offered at the trial or wherein the variance in any way affected his defense. The indictment pleaded essential facts with sufficient certainty to apprise the appellant of what he would be required to meet and enable him to prepare for his defense.[4] The United States Attorney in his opening statement referred specifically to "intimidation",[5] and the court included an instruction on "intimidation" in its charge to the jury, without comment or objection on the part of appellant.[6] It is clear from the record that the case was tried on the assumption that the indictment charged robberies by force and violence or by intimidation.[7]

Nor is there any danger of another prosecution for the same offense. The facts proved at the trial clearly related to those charged in the indictment. Were another prosecution attempted, appellant could successfully interpose a plea of double jeopardy. No "substan-

ial rights" of appellant were affected, and any variance between the indictment and proof accordingly must be disregarded.

Appellant claims error in the admission of confessions given to Thomas B. White, Jr., an agent of the Federal Bureau of Investigation, and White's testimony regarding the confessions. When the confessions were obtained, appellant was confined in a federal correctional institution on an unrelated offense. When first interviewed by White regarding the robberies, appellant denied any connection with them. About a week later White was requested by the warden of the institution to investigate an attempted escape in which appellant might have been involved. During this investigation White again questioned appellant regarding the robberies, with the same result as before. A few days thereafter appellant asked to see White. At a meeting in a business office in the institution appellant orally admitted participation in the robberies and signed written confessions, one relating to each offense.

Counsel for appellant does not contend that there was any illegal detention, but argues that the confessions were obtained by duress and were involuntary because given under physical stress and deprivation. No motion had been made to suppress the confessions, but when appellant objected to White's testimony

---

ror did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress." 328 U.S. at page 765, 66 S. Ct. at page 1248.

3. See also United States v. Sing Kee, 2 Cir., 1957, 250 F.2d 236, 242, certiorari denied 355 U.S. 954, 78 S.Ct. 538, 2 L. Ed.2d 530.

4. See Barkdoll v. United States, 9 Cir., 1945, 147 F.2d 617.

5. In his opening statement the attorney for the United States said: "The first element is that the Government must prove to your satisfaction beyond a reasonable doubt that by force and violence or by intimidation the defendants, or one of them * * * took from the per-

son or presence of another person * * money belonging to or in the care, custody control, management or possession of a bank."

6. In its charge to the jury, the court said: "Whoever, by force and violence, or by intimidation, takes, or attempts to take from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank is guilty of robbery."

7. Cf. Hodges v. United States, 5 Cir., 1955, 223 F.2d 140, 143, where it was held that the trial court had properly ruled that "it was obvious from the record that 'everybody had in mind the occurrences that were developed here in evidence as being the things that were in issue'."

regarding them, the court excused the jury. Both White and appellant were interrogated by counsel and the court in the jury's absence. Appellant testified that when he signed the confession he had been in isolation for five days, deprived of his clothing, forced to sleep on a concrete floor, and that he had not had very much sleep. White, however, testified that appellant appeared to be in good health and did not appear tired, but that appellant had requested coffee. White obtained coffee and cigarettes, which appellant drank and smoked during the interview.

Appellant testified that his purpose in signing the confession was "to get out of the hole." [8] There is no evidence, however, that appellant sought White's assistance in getting out of the hole or that any promise with respect thereto was made by White either before or after the confessions were given. Appellant was still in isolation the day after giving the confessions, and it does not appear when he was released from isolation. He testified that as far as he knew White had nothing to do with his being in isolation.

Following the testimony in the absence of the jury, the court overruled appellant's objections to White's testimony. When the jury was recalled, White repeated his testimony, but appellant did not testify. Following White's testimony, the confessions were admitted without objection, the court admonishing the jury that in admitting the confession "the court expresses no opinion about it." The trial court properly charged the jury that "if the evidence does not convince beyond all reasonable doubt that a confession was made voluntarily, the jury should disregard it entirely."

■ There is no evidence that appellant was illegally detained or that White obtained the confessions by means of any promise, threat, coercion or duress. In our opinion the confessions were voluntarily made and were properly admitted in evidence.

It is appellant's final contention that the court abused its discretion in imposing the maximum sentence under each count, to run consecutively, and that the sentence imposed constituted "cruel and unusual punishment." This court is urged to reverse and direct judgment of acquittal or, in the alternative, to reduce the sentence on each count or provide that they run concurrently.

■ It is well settled that a sentence within a valid statute cannot amount to "cruel and unusual punishment", and that when a statute provides for such punishment, the statute only can be attacked.[9] It is equally clear that the appellate court has no power to modify

---

8. At the beginning of his direct examination, however, appellant testified:

"Q. Will you state the circumstances of the interview with Mr. White, at the end of which you signed the statement in question? A. Mr. White, like he said, I requested to see him and I asked him if he had these confessions from my wife and Mr. Hobart, and he said yes.

"And I said, 'Well, in that case I think the best thing for us to do then is to bring this case to trial, and I will sign a confession.'

"So he began relating if this is the way it happened, and I said, 'Yes, that is the way it happened.' And I added a few things of my own in there, so when this did happen we would be able to show it was not a true statement."

9. United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 607 et seq. And in Jack-

son v. United States, 9 Cir., 1900, 102 F. 473, 487, this court said: " * * * The fact that the court imposed the maximum punishment furnishes no ground for the reversal of the case. The extent of the sentence was within the discretion of the judge who tried the case, and who was well advised as to the facts. Article 8 of the constitution of the United States provides that 'excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' The sentence imposed in the present case cannot be considered in violation of this provision of the constitution. The general rule is well settled that the sentence and punishment imposed upon a defendant for any violation of the provisions of the statute, which is within the punishment provided for by the statute, cannot be regarded as excessive, cruel, or unusual."

or reduce the sentence. " 'If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute.' Gurera v. United States, 8 Cir., 1930, 40 F.2d 338, 340." Brown v. United States, 9 Cir., 1955, 222 F.2d 293, 298.[10]

Judgment affirmed.

10. See also Tomoya Kawikata v. United States, 9 Cir., 190 F.2d 506, 528, affirmed 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249; United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 604 et seq.

While the sentences imposed are severe, this court is without authority to consider any reduction or modification. Any petition for reduction of sentence may be directed to the trial court, for its consideration, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, which provides that, "The court may reduce a sentence * * * within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment * *."