Application of Frederick William HAIR-STON for a Writ of Habeas Corpus, Petitioner,

v.

Peter PITCHESS, Sheriff of Los Angeles County, California, Respondent,

Roger ARNEBERGH, City Attorney of Los Angeles, California, an attorney for the People of the State of California, Real Party in Interest.

Civ. No. 71–248.

United States District Court,
C. D. California.

Feb. 18, 1971.

Hugh R. Manes and David B. Finkel, Los Angeles, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., State of California, by Jack Weber, Deputy Atty. Gen., Los Angeles, Cal., for respondent.

Roger Arnebergh, City Atty., City of Los Angeles, by Madeleine Flier, Deputy City Atty., Los Angeles, Cal., for real party in interest.

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS, FOR STAY OF EXECUTION AND FOR BAIL, AND DISMISSING PETITION.

KELLEHER, District Judge.

This proceeding was commenced by the filing of an application for a writ of habeas corpus seeking the immediate release of petitioner from the custody of respondent, the Sheriff of Los Angeles County, or, in the alternative, for an order of this court directed to respondent Sheriff requiring him to appear and show cause why the relief requested should not be granted. By separate application petitioner sought a stay of execution, or alternatively, for reasonable bail pending determination of his application for a writ of habeas corpus.

By his application and Points and Authorities submitted in support thereof, petitioner invokes jurisdiction under 28 U.S.C. § 2255 (which authorizes collateral attack by post conviction proceedings in cases where petitioner is in *federal* custody), and under 28 U.S.C. § 1331(a) (which grants jurisdiction to this court in specified civil actions), and alleges his is a claim arising under the laws and Constitution of the United States. The petition will be deemed brought under 28 U.S.C. § 2241(c) and (d) for liberal construction is appropriate. Accordingly, the petition is deemed well within the jurisdiction of this court.

Petitioner's application was filed and personally presented by his counsel in chambers to a judge of this court who summoned counsel for the respondent and directed the submission of a written response within three days time. Re-

spondent filed his Response to Application for Writ of Habeas Corpus, including the Reporter's Transcript and the Engrossed Statement on Appeal, before the Appellate Department of the Superior Court of the State of California for the County of Los Angeles. The court thereupon declined to issue the Order to Show Cause requested but afforded counsel an opportunity to appear jointly and argue the matter; both sides declined the opportunity.

Upon the foregoing, and for the reasons hereinafter stated, both applications are denied.

Respondent's custody of petitioner resulted from his having been charged with, and after trial by jury in the Municipal Court of Los Angeles Judicial District, his conviction of, violation of California Penal Code, section 409.[1]

After denial by the trial court of petitioner's motion for a new trial,[2] he was offered probation by the sentencing court on terms[3] which he declined. A sentence of sixty days in the Los Angeles County Jail was thereupon imposed. Some portion of this sentence has been served; petitioner by this proceeding seeks release from serving the balance of that sentence.

Petitioner has exhausted his State remedies by the following proceedings:

1. On appeal by petitioner to the Appellate Department of the Superior Court of the State of California for the County of Los Angeles the judgment was affirmed, a rehearing was denied, and the cause was certified to the Court of Appeal of the State of California, Second Appellate District. People v. Hairston, 8 Cal. App.3d Supp. 19; 87 Cal.Rptr. 470.

2. The Court of Appeal of the State of California, Second Appellate District, denied a hearing. Crim. 18197 People v. Flynn, et al., 8 Cal. App.3d (Minutes, p. 26; May 29. 1970).

3. The Supreme Court of California, Crim. No. 15304, without a hearing, denied a writ of habeas corpus on a petition raising each of the constitutional issues raised herein; Mr. Justice Peters voted to grant a hearing.

Prior to his petition to the Supreme Court of the State of California for a writ of habeas corpus, petitioner sought, and was denied, a writ of certiorari by the Supreme Court of the United States, 400 U.S. 952, 91 S.Ct. 250, 27 L.Ed.2d 258 (1970).

The facts before the jury and the sentencing judge were as follows:

At the time of his arrest on January 9, 1969, petitioner was a nineteen year old full time student at San Fernando Valley State College ("the college"). On that date and prior to petitioner's arrest, the Acting President ("the President") of the college declared a state of emergency and issued an order banning all rallies and assemblies on campus. The order was distributed throughout the campus by postings, handouts and broadcasts. The order was disregarded

---

1. Cal.Pen.C. § 409
   "*REMAINING PRESENT AT PLACE OF RIOT, ETC., AFTER WARNING TO DISPERSE.* Every person remaining present at the place of any riot, rout, or unlawful assembly, after the same has been lawfully warned to disperse, except public officers and persons assisting them in attempting to disperse the same, is guilty of a misdemeanor.

2. The motion for a new trial was based on all statutory and constitutional grounds, and, additionally, on grounds that his conviction and the sentence imposed constituted denial of due process and equal protection under the law in violation of the Fourteenth Amendment to the United States Constitution.

3. The conditions of probation were to include:
   1. A sentence of seven days in the County Jail;
   2. A fine of $250.00, payable in stipulated monthly installments;
   3. Obtaining and maintaining a job at a specified salary;
   4. Reporting to the court each month, personally;
   5. Submitting an affidavit at the end of two years accounting for his performance while on probation.

and an assembly, including petitioner, formed in the forum area of the college. The police were called and numerous formal dispersal orders were given by a police lieutenant. Petitioner testified in his own behalf and admitted his presence in the assembly and the audibility of the dispersal order. The petitioner was not involved in the organizing and leading of the demonstration which was peaceful, and his arrest, as well as the arrest of others, was effected peacefully and met no resistance.

The President of the college testified that, in declaring a state of emergency and in issuing his order banning all rallies and assemblies on campus, he did so because he knew that from April of 1968 to January 8th of 1969 increasing tension was noticeable on the campus, that in April 1968 the Black Student Union (BSU) urged the students to bring guns and "take whites with them", that on November 4, 1968, the BSU and the Students for Democratic Society (SDS) seized the second and fifth floors of the college administration building preventing employees from entering or leaving those floors. The President at that time had observed a BSU leader threaten the then Acting President of the college with physical harm unless he signed a statement endorsing certain demands; that the then Acting President was held prisoner until the demands were signed; that at that time college elevator doors were purposely jammed, master keys were stolen and college employees were physically abused; that on December 8, 1968, a fire was set in the administration building causing thousands of dollars of damage, including destruction of the President's office; that the arsonist was later identified as a member of SDS; that on December 20, 1968, there were fights on campus between the stu-

dents, causing many to be seriously injured. College was recessed from December 21st to January 5th for the Christmas holidays; however, on January 6th classes could not resume because of the campus situation. On January 7th the college president, having that day been appointed as such, attempted to speak to approximately 300 students who had marched from the forum area. The President recognized many BSU and SDS leaders, some of whom were involved in the November 4th seizure of the college administration building. He was prevented from speaking by members of the crowd who were screaming insults and obscenities. Fist fights broke out between students, and campus police had to form a barrier between the President and the crowd so that he could leave the area. On numerous occasions that day students entered classrooms, interrupted work and urged students to join the demonstration. The President was informed by observers that BSU and SDS leaders spoke at the forum exhorting the crowd to get their demands by "any means necessary", including "tearing the whole place down." A security guard was beaten on January 8th; police officers attempted to move the crowd back from the administration building, which resulted in an officer and several students being severely injured. In addition, there was considerable damage to property in the immediate area. On the evening of January 8th the President received a letter from two faculty members requesting him to cancel classes on January 9th as violence was probable.

■ The college President's order banning rallies and assemblies on campus was authorized by rules and regulations adopted by the college's Board of Trustees.[4] California Education Code,

---

4. "'1. The primary reason for the existence of the college is the educational process. Classes and other proper educational activities (as determined by the college) should be allowed to continue without disruption.
"'2. The only environment within which the educational process can be success-

fully conducted is one of academic freedom. Such academic freedom shall not be construed to include actions which disrupt the educational process through the use of violent or coercive means.
"'3. The president of each state college has the authority and the responsibility to do everything possible to prevent the

section 23605. The Board of Trustees, a creature of the California legislature, (*ibid.*, § 22600), is empowered to govern the state colleges, (*ibid.*, § 23604(c)), by establishing rules and regulations for use and maintenance of college buildings and grounds, the violation of which is a misdemeanor (*ibid.*, § 23604.1). Accordingly, the January 9th order, pursuant to which petitioner was arrested, was a valid exercise of the college President's lawful authority.

It is apparent that petitioner's principal claim to a writ here rests upon a narrow and limited ground. He has stated that ground as follows:

"Petitioner's said confinement and detention is illegal in that his sentence under said judgment has a chilling effect upon freedom of speech and assembly, as guaranteed by the First Amendment to the United States Constitution, is cruel and unusual in violation of the Eighth Amendment to the Federal Constitution, is unreasonable, inequitable and discriminatory, thereby offending the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. \* \* \*"

■ Petitioner's counsel elaborated before the court that all constitutional contentions made here had been previously asserted and rejected, save one, *viz.*, the severity of sentence. Petitioner claims his sentence: (1) is cruel and unusual punishment proscribed by the Eighth Amendment, (2) is so harsh as to be unreasonable and offensive to the due process and equal protection clauses of the Fourteenth Amendment, and (3) offends the First Amendment by casting a chilling effect on those who would assert their rights thereunder. This court, by independent consideration and separate determination, concludes that these grounds are without merit.

■ A full examination and review of the record here and of all previous proceedings leaves this court unimpressed with the arguments under the Eighth and Fourteenth Amendments. They have been adequately covered and properly disposed of in prior proceedings. The fact that State tribunals have rejected petitioner's claims is no bar here. Brown v. Allen, 344 U.S. 443, 456, 73 S.Ct. 397, 97 L.Ed. 469 (1953). See 28 U.S.C.A. §§ 2244(c), 2254(d). This court is neither bound nor compelled by the prior determinations. But the contentions, respectively, that the sentence constitutes cruel and unusual punishment and is violative of due process and of equal protection of the law, have been shown, for the reasons stated in prior proceedings, to be so vacuous as to be almost frivolous. See 8 Cal.App.3d Supp. 19, 87 Cal.Rptr. 470. Petitioner apparently does not assert here that California Penal Code, section 409, under which he was convicted, is unconstitutional, but only that, as applied to him by the sentence imposed is it constitutionally offensive. But a sentence well within the statutory limits is inoffensive to the Eighth Amendment. Pependrea v. United States, 275 F.2d 325, 329 (9th Cir. 1960). Moreover, petitioner refused a less severe sentence under terms of probation offered by the trial court. The fact that of the other participants arrested at the January 9th assembly some were and some were not convicted of violating section 409 does not, without more, indicate that petitioner's conviction violates the due process and equal protection clauses of the Fourteenth Amendment.

■ Finally, this court concludes that petitioner's contention that his sentence has a chilling effect on First Amendment rights is without merit. Indeed, petitioner's sentence, like all criminal sanctions, was intended to deter the ac-

disruption of the educational process. The president is expected to work with the faculty, the students, and the outside community to prevent the disruption of the educational process.

" '4. In the event that disruption of the educational process threatens or occurs,

the president shall use all means at his disposal, including police when necessary, to maintain or restore the normal educational process.' " See 8 Cal.App.3d Supp. 23, 24, 87 Cal.Rptr. 472.

tivity for which he was convicted. But it is the unlawfulness of failing to disperse pursuant to a lawful order of the college President for which petitioner was convicted and not any allegedly lawful assertion of First Amendment rights of assembly. The assertion of such rights does not sanctify, nor justify, acts otherwise unlawful under State laws. No constitutional infirmity is shown where, as here, the State reasonably and fairly enforces such laws. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L. Ed.2d 182 (1968). In any event, it is not believed that the circumstances of petitioner's arrest, conviction or sentence are such as to deter or impede the lawful exercise of First Amendment privileges.

This opinion will be deemed to constitute Findings of Fact (as to which no dispute appeared) and Conclusions of Law, and, accordingly, the applications are denied and the petitions are dismissed.

It is ordered that the Clerk of the court send, by United States mail, copies of this order to all counsel.